

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TM:NMA/JD/MKM            *271 Cadman Plaza East*
F.#2011R02050            *Brooklyn, New York  11201*

March 15, 2012

**Via ECF**

The Honorable Carol B. Amon
Chief United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  United States v. Vincent Badalamenti, et al.
>      Criminal Docket No. 12-050 (S-1)(CBA)

Dear Chief Judge Amon:

The government writes in response to defense counsel's letters of March 12 and 13, 2012, citing the wait times at the Metropolitan Detention Center ("MDC") for attorney visits with defendant Vincent Badalamenti and seeking a Court conference at which to "request that the Court either (1) vacate the separation orders; or (2) assist the parties in coming up with a solution to this ongoing problem."  See March 12, 2012 letter from Ronald Fischetti, Docket No. 87 (the "Fischetti letter"); March 13, 2012 letter from Phyllis Malgieri, Docket No. 88 (the "Malgieri letter").  For the reasons set forth below, the government respectfully submits that a conference is not necessary and that counsel for Badalamenti should be directed to work with other defense counsel to arrive at a schedule for attorney visits.

Upon receiving the Fischetti and Malgieri letters, the government promptly contacted Nicole McFarland, Esq., Staff Attorney in the MDC's Legal Department.  Ms. McFarland explained that some of the wait times cited by counsel are not exceptional at the MDC.  She noted that the MDC has succeeded in shortening the wait times over recent years, but that many defense lawyers continue to complain that the waits are too long.  These wait times exist for all attorneys and are typically due to the security measures in place at the MDC unrelated to separation

orders.[1]  Ms. McFarland explained that wait times often occur because, among other reasons, all movement of inmates stops when there is an inmate count or when an inmate from the Special Housing Unit (the "SHU") is moved within the MDC.  For example, if defense counsel happens to arrive when an inmate – unrelated to this case – who is housed in the SHU is being taken to the medical facility, counsel will have to wait until that transfer is complete before Badalamenti can be brought to the visiting area.

Ms. McFarland explained that these MDC policies are in place for important security and safety reasons.  She further explained that it would be against MDC policy for an officer to refer to a separation order in speaking with defense counsel.  If an officer cites movement of another inmate as the reason for a delay, it is likely a reference to an inmate from the SHU rather than an unauthorized reference to a separation order.  Indeed, the Malgieri letter acknowledges that, at the time of the March 13, 2012 visit, the officers did not attribute the wait to any separation order.  It is unlikely that the separation orders were the cause of the wait.

To the extent any part of the delays experienced by counsel for Badalamenti are attributable to the separation orders, the government has stood ready to assist since the issue was first raised at the Court's conference on February 7, 2012.  The government noted at that time that, in a recent case before Judge Garaufis, seven defendants were separated in the MDC and defense counsel for all seven defendants were able to schedule their meetings to avoid conflicts.  See Feb. 7, 2012 Transcript, which is attached hereto as Exhibit A, at 20-21.  However, to date, no defense counsel has requested the government's assistance in setting a schedule for attorney visits, and, given that Mr. Fischetti went to the MDC during another defendant's family visit time, it appears that no real effort has been made amongst themselves to set such a schedule.  See Fischetti Letter at 2; Malgieri Letter at 1.

---

[1] The undersigned attorneys for the government also have experienced these long wait times when meeting with inmates at various Bureau of Prison facilities.

Upon receiving the Fischetti and Malgieri letters, the government requested and received from the MDC the following information with regard to the defendants under separation orders, who are each in different units in the MDC:[2]

| Defendant | Computer for Discovery in Unit | Family Visits |
|---|---|---|
| Badalamenti | Yes | Tuesday afternoons |
| Graziano | Yes | Monday afternoons |
| Santora | Yes | Friday afternoons |

It is important to note that the period from 8:00 a.m. to 12:00 p.m. is reserved for attorney visits seven days per week.  No family visits take place during this time.  In addition, family visiting hours are set for either 12:00 p.m. to 3:00 p.m., or 5:00 p.m. to 7:00 p.m. and each inmate is allowed only one hour of family visits on his visiting day.  Therefore, if a defendant's family is planning to visit from 6:00 p.m. to 7:00 p.m., the defendant can tell his attorney and they can meet any time from 8:00 a.m. through 6:00 p.m.

Defense counsel are, of course, free to devise amongst themselves a schedule for attorney visits.  Based on the foregoing, however, the government suggests the following schedule:

---

[2] The government has determined that the separation order as to James LaForte is not necessary at this time, based on a totality of the circumstances and his affiliation in a different crime family from the other defendants.  The government therefore consents to a lifting of James LaForte's separation order.

3

| **Defendant** | **Attorney Visits** |
|---|---|
| Badalamenti | Thursdays - all day<br>Tuesdays - 8-12<br>Alternating Sundays |
| Graziano | Wednesdays - all day<br>Mondays - 8-12<br>Alternating Sundays |
| Santora | Saturdays - all day<br>Fridays - 8-12<br>Alternating Sundays |

Based on this schedule, each attorney would have a full day plus one morning each week, in addition to alternating Sundays. The morning scheduled for each defendant would be on the same day as that defendant's family visits. This would allow the defendant to tell his attorney at what time he expects his family to arrive, thus maximizing attorney visiting time.

Finally, the Fischetti letter suggests that "the validity and necessity" of the separation orders should be addressed in a conference before the Court. He has not cited any authority, however, for the proposition that the MDC can or should be prevented from separating defendants for safety and security reasons and to protect the community from further criminal conduct.

As explained by the government at the February 7, 2012 conference, separation orders are used with regard to high-ranking members of the Bonanno crime family because there is ample evidence that such members have, when given the opportunity, continued to run the affairs of the family from behind bars.[3] Indeed, testimony in this courthouse has demonstrated the danger inherent in housing high-ranking members of the Bonanno crime family together in the MDC. In May 2011, a former Bonanno acting captain testified that after his 2004 arrest, he was incarcerated at the MDC with, among others, Bonanno captains Anthony Calabrese and Patrick DeFilippo and Bonanno acting boss Vincent Basciano. See U.S. v. Basciano, 05-CR-060 (NGG), testimony of G. Barbieri, excerpt attached hereto as Exhibit B, at 8657-61. At that time, Basicano spoke to

---

[3] Contrary to the Fischetti letter, the government did not argue that separation is appropriate simply because "we do it in all of the Bonanno cases." See Feb. 7, 2012 Transcript at 20-21.

4

DeFilippo and Barbieri about making "an example" of their federal prosecutor, by which Barbieri understood him to mean: "We should kill him." Id. at 8659.

While this is an extreme example of the conduct that high-ranking members of the Bonanno crime family have engaged in while in custody, examples of each of these defendants' willingness to engage in criminal conduct while in custody or under supervision also exist.  Following their previous releases from prison, Defendants Badalamenti, Graziano and Santora all promptly resumed their criminal conduct, even while still under Court supervision.  See Gov.'s Mot. for Permanent Orders of Detention, dated Jan. 27, 2012, at 17-18 (Badalamenti), 24-27 (Santora), and 34 (Graziano).  Defendant Graziano resumed this conduct while still residing in a federal halfway house.  Id. at 34.  The Bonanno crime family generally, and these defendants specifically, have demonstrated that they will take advantage of any opportunity to resume their criminal conduct.  The separation orders that are in place appropriately make it more difficult for them to engage in such conduct.

For the reasons stated above, the government respectfully submits that the separation orders as to defendants Badalamenti, Graziano and Santora should remain in place, that defense counsel should be directed to work out a schedule for attorney visits, and that a Court conference on the issue is not required.

                                    Respectfully submitted,

                                    LORETTA E. LYNCH
                                    United States Attorney
                                    Eastern District of New York


                              By:      /s/
                                    Nicole Argentieri
                                    Jack Dennehy
                                    Kristin Mace
                                    Assistant U.S. Attorneys


Enclosures

cc:  All counsel (by ECF)

5