TM:NMA/JD
F.#2011R02050

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

VINCENT BADALAMENTI,
   also known as "Vinny TV,"
VITO BALSAMO,
ANTHONY CALABRESE,
ANTHONY GRAZIANO,
   also known as "TG,"
JAMES LAFORTE and
NICHOLAS SANTORA,
   also known as "Nicky
   Mouth,"

             Defendants.

- - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. <u>12-050 (S-2)(CBA)</u>
(T. 18, U.S.C., §§ 892(a),
 894(a)(1), 981(a)(1)(C),
 1951(a), 1955(a), 1955(d),
 1962(d), 1963, 1963(a),
 1963(m), 2 and 3551 <u>et
 seq</u>.; T. 21, U.S.C., §§
 841(b)(1)(D), 846, 853(a)
 and 853(p); T. 28, U.S.C.,
 § 2461(c))

THE GRAND JURY CHARGES:

<u>INTRODUCTION TO ALL COUNTS</u>

     At all times relevant to this Superseding Indictment,
unless otherwise indicated:

<u>The Enterprise</u>

     1.   The members and associates of the Bonanno organized
crime family of La Cosa Nostra constituted an "enterprise," as
defined in Title 18, United States Code, Section 1961(4), that
is, a group of individuals associated in fact (hereinafter the
"Bonanno crime family" and the "enterprise").   The enterprise
constituted an ongoing organization whose members functioned as a

continuing unit for a common purpose of achieving the objectives of the enterprise. The Bonanno crime family engaged in, and its activities affected, interstate and foreign commerce. The Bonanno crime family was an organized criminal group that operated in the Eastern District of New York and elsewhere.

2. La Cosa Nostra operated through organized crime families. Five of these crime families - the Bonanno, Colombo, Gambino, Genovese and Luchese crime families - were headquartered in New York City, and supervised criminal activity in New York, in other areas of the United States and, in some instances, in other countries. Another crime family, the Decalvacante crime family, operated principally in New Jersey, but from time to time also in New York City.

3. The ruling body of La Cosa Nostra, known as the "Commission," consisted of leaders from each of the crime families. The Commission convened from time to time to decide certain issues affecting all of the crime families, such as rules governing crime family membership.

4. The Bonanno crime family had a hierarchy and structure. The head of the Bonanno crime family was known as the "boss." The Bonanno crime family boss was assisted by an "underboss" and a counselor known as a "consigliere." Together, the boss, underboss and consigliere were the crime family's "administration." With the assistance of the underboss and

2

consigliere, the boss was responsible for, among other things, setting policy and resolving disputes within and between La Cosa Nostra crime families and other criminal groups. The administration further supervised, supported, protected and disciplined the lower-ranking participants in the crime family. In return for their supervision and protection, the administration received part of the illegal earnings generated by the crime family. Members of the Bonanno crime family served in an "acting" rather than "official" capacity in the administration on occasion due to another administration member's incarceration or ill health, or for the purpose of seeking to insulate another administration member from law enforcement scrutiny. Further, on occasion, the Bonanno crime family was overseen by a "panel" of crime family members that did not include the boss, underboss and/or consigliere.

5. Below the administration of the Bonanno crime family were numerous "crews," also known as "regimes" and "decinas." Each crew was headed by a "captain," also known as a "skipper," "caporegime" and "capodecina." Each captain's crew consisted of "soldiers" and "associates." The captain was responsible for supervising the criminal activities of his crew and providing the crew with support and protection. In return, the captain often received a share of the crew's earnings.

6.   Only members of the Bonanno crime family could serve as a boss, underboss, consigliere, captain or soldier. Members of the crime family were referred to on occasion as "goodfellas" or "wiseguys," or as persons who had been "straightened out" or who had their "button." Associates were individuals who were not members of the crime family, but who nonetheless engaged in criminal activity for, and under the protection of, the crime family.

7.   Many requirements existed before an associate could become a member of the Bonanno crime family. The Commission of La Cosa Nostra from time to time limited the number of new members that could be added to a crime family. An associate was also required to be proposed for membership by an existing crime family member. When the crime family's administration considered the associate worthy of membership, the administration then circulated the proposed associate's name on a list given to other La Cosa Nostra crime families, which the other crime families reviewed and either approved or disapproved. Unless there was an objection to the associate's membership, the crime family then "inducted," or "straightened out," the associate as a member of the crime family in a secret ceremony. During the ceremony, the associate, among other things: swore allegiance for life to the crime family above all else, even the associate's own family; swore, on penalty of death, never to reveal the crime family's

4

existence, criminal activities and other secrets; and swore to follow all orders issued by the crime family boss, including swearing to commit murder if the boss directed it.

### Methods and Means of the Enterprise

8.   The principal purpose of the Bonanno crime family was to generate money for its members and associates.  This purpose was implemented by members and associates of the Bonanno crime family through various criminal activities, including drug trafficking, robbery, extortion, fraud, bribery, illegal gambling and loansharking.  The members and associates of the Bonanno crime family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9.   Although the primary purpose of the Bonanno crime family was to generate money for its members and associates, the members and associates at times used the resources of the family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the family.  For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10.   The members and associates of the Bonanno crime family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the

5

location of proceeds of those activities.  That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11.  Members and associates of the Bonanno crime family often coordinated criminal activity with members and associates of other organized crime families.

### The Defendants

12.  The defendants VINCENT BADALAMENTI, also known as "Vinny TV," VITO BALSAMO, ANTHONY CALABRESE, ANTHONY GRAZIANO, also known as "TG," and NICHOLAS SANTORA, also known as "Nicky Mouth," participated in the operation and management of the enterprise.

13.  At various times, the defendant VINCENT BADALAMENTI, also known as "Vinny TV," was a member of the administration, a captain, acting captain, soldier and associate within the Bonanno crime family.

14.  At various times, the defendant VITO BALSAMO was an acting captain, soldier and associate within the Bonanno crime family.

15.  At various times, the defendant ANTHONY CALABRESE was a soldier and associate within the Bonanno crime family.

6

16.   At various times, the defendant ANTHONY GRAZIANO, also known as "TG," was a member of the administration, a captain, acting captain, soldier and associate within the Bonanno crime family.

17.   At various times, the defendant NICHOLAS SANTORA, also known as "Nicky Mouth," was a member of the administration, a captain, acting captain, soldier and associate within the Bonanno crime family.

COUNT ONE
(Racketeering Conspiracy)

18.   The allegations contained in paragraphs 1 through 15 are realleged and incorporated as if fully set forth in this paragraph.

19.   On or about and between January 1, 1999 and September 7, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT BADALAMENTI, also known as "Vinny TV," VITO BALSAMO and ANTHONY CALABRESE, together with others, being persons employed by and associated with the Bonanno crime family, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title

7

18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below.  Each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

RACKETEERING ACT ONE
(Extortionate Extension of Credit Conspiracy/Extortionate
Extension of Credit/Extortionate Collection of Credit Conspiracy/
Extortionate Collection of Credit - John Doe #1)

20.  The defendant VINCENT BADALAMENTI agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act One:

A.   Extortionate Extension of Credit Conspiracy

21.  On or about and between January 1, 1999 and December 31, 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BADALAMENTI, together with others, did knowingly and intentionally conspire to make one or more extortionate extensions of credit to John Doe #1, an individual whose identity is known to the Grand Jury, in violation of Title 18, United States Code, Section 892(a).

B.   Extortionate Extension of Credit

22.  On or about and between January 1, 1999 and December 31, 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BADALAMENTI, together with others, did knowingly and intentionally make one or more extortionate

8

extensions of credit to John Doe #1, in violation of Title 18, United States Code, Sections 892(a) and 2.

C.   Extortionate Collection of Credit Conspiracy

23.   On or about and between January 1, 1999 and December 31, 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BADALAMENTI, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #1, in violation of Title 18, United States Code, Section 894(a)(1).

D.   Extortionate Collection of Credit

24.   On or about and between January 1, 1999 and December 31, 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BADALAMENTI, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #1, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

E.   State Law Extortion Conspiracy

25.   On or about and between January 1, 1999 and December 31, 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the

9

defendant VINCENT BADALAMENTI, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #1 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

      F.   <u>State Law Extortion</u>

      26.  On or about and between January 1, 1999 and December 31, 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BADALAMENTI, together with others, did knowingly and intentionally steal property by extortion, in that the defendant and others obtained property, to wit: money, by compelling and inducing John Doe #1 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

RACKETEERING ACT TWO
(Hobbs Act Extortion Conspiracy/Hobbs Act Extortion/Extortion
Conspiracy/Extortion - John Doe #2)

27.   The defendant VINCENT BADALAMENTI agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Two:

A.   Hobbs Act Extortion Conspiracy

28.   On or about and between January 1, 1999 and December 31, 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BADALAMENTI, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others agreed to obtain property, to wit: a bar located on Coney Island Avenue in Brooklyn, New York, from John Doe #2, with his consent, which consent was to be induced by wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Section 1951(a).

B.   Hobbs Act Extortion

29.   On or about and between January 1, 1999 and December 31, 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BADALAMENTI, together with others, did knowingly and intentionally obstruct, delay and affect commerce,

11

and the movement of articles and commodities in commerce, by extortion, in that the defendant and others obtained property, to wit: a bar located on Coney Island Avenue in Brooklyn, New York, from John Doe #2, with his consent, which consent was induced by wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

C.   State Law Extortion Conspiracy

30.   On or about and between January 1, 1999 and December 31, 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BADALAMENTI, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: a bar located on Coney Island Avenue in Brooklyn, New York, by compelling and inducing John Doe #2 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

12

D.    State Law Extortion

31.    On or about and between January 1, 1999 and
December 31, 1999, both dates being approximate and inclusive,
within the Eastern District of New York and elsewhere, the
defendant VINCENT BADALAMENTI, together with others, did
knowingly and intentionally steal property by extortion, in that
the defendant and others obtained property, to wit: a bar located
on Coney Island Avenue in Brooklyn, New York, by compelling and
inducing John Doe #2 to deliver such property by instilling in
him a fear that, if the property were not so delivered, one or
more persons would (1) cause physical injury to one or more
persons in the future and (2) cause damage to property, in
violation of New York Penal Law Sections 155.40(2),
155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

RACKETEERING ACT THREE
(Extortionate Collection of Credit Conspiracy - John Doe #3)

32.    In or about and between February 2002 and August
2002, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant VINCENT
BADALAMENTI, together with others, did knowingly and
intentionally conspire to participate in the use of extortionate
means to collect and attempt to collect one or more extensions of
credit from John Doe #3, an individual whose identity is known to
the Grand Jury, in violation of Title 18, United States Code,
Section 894(a)(1).

## RACKETEERING ACT FOUR
(Extortion Conspiracy/Attempted Extortion - John Doe #4)

33. The defendant VITO BALSAMO committed the following acts, either one of which alone constitutes Racketeering Act Four:

A. State Law Extortion Conspiracy

34. In or about and between 2001 and 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VITO BALSAMO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #4, an individual whose identity is known to the Grand Jury, to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

B. State Law Attempted Extortion

35. In or about and between 2001 and 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VITO BALSAMO, together with others, did knowingly and intentionally attempt to steal property

14

by extortion, in that the defendant and others attempted to obtain property, to wit: money, by compelling and inducing John Doe #4 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii), 110.00 and 20.00.

RACKETEERING ACT FIVE<br>(Illegal Gambling)

36.   On or about and between September 1, 2008 and January 31, 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BADALAMENTI, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving bookmaking, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of 30

days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955(a) and 2.

## RACKETEERING ACT SIX
### (Marijuana Distribution Conspiracy)

37.   On or about and between September 1, 2008 and January 31, 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BADALAMENTI, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

## RACKETEERING ACT SEVEN
### (Extortionate Extension of Credit Conspiracy/Extortionate Extension of Credit/Extortionate Collection of Credit Conspiracy/ Extortionate Collection of Credit - John Doe #5)

38.   The defendants named below committed the following acts in which they are named, any one of which alone constitutes Racketeering Act Seven:

A.   Extortionate Extension of Credit Conspiracy

39.   On or about and between January 1, 2009 and September 7, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BADALAMENTI, together with others, did

knowingly and intentionally conspire to make one or more extortionate extensions of credit to John Doe #5, an individual whose identity is known to the Grand Jury, in violation of Title 18, United States Code, Section 892(a).

     B.   <u>Extortionate Extension of Credit</u>

     40.  On or about and between January 1, 2009 and September 7, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BADALAMENTI, together with others, did knowingly and intentionally make one or more extortionate extensions of credit to John Doe #5, in violation of Title 18, United States Code, Sections 892(a) and 2.

     C.   <u>Extortionate Collection of Credit Conspiracy</u>

     41.  On or about and between January 1, 2009 and September 7, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT BADALAMENTI, VITO BALSAMO and ANTHONY CALABRESE, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #5, in violation of Title 18, United States Code, Section 894(a)(1).

D.   Extortionate Collection of Credit

42.   On or about and between January 1, 2009 and
September 7, 2011, both dates being approximate and inclusive,
within the Eastern District of New York and elsewhere, the
defendants VINCENT BADALAMENTI, VITO BALSAMO and ANTHONY
CALABRESE, together with others, did knowingly and intentionally
participate in the use of extortionate means to collect and
attempt to collect one or more extensions of credit from John Doe
#5, in violation of Title 18, United States Code, Sections
894(a)(1) and 2.

E.   State Law Extortion Conspiracy

43.   On or about and between January 1, 2009 and
September 7, 2011, both dates being approximate and inclusive,
within the Eastern District of New York and elsewhere, the
defendants VINCENT BADALAMENTI, VITO BALSAMO and ANTHONY
CALABRESE, together with others, did knowingly and intentionally
conspire to steal property by extortion, in that the defendants
and others agreed to obtain property, to wit: money, by
compelling and inducing John Doe #5 to deliver such property by
instilling in him a fear that, if the property were not so
delivered, one or more persons would (1) cause physical injury to
one or more persons in the future and (2) cause damage to
property, in violation of New York Penal Law Sections 155.40(2),
155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

18

F.   State Law Extortion

44.   On or about and between January 1, 2009 and September 7, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT BADALAMENTI, VITO BALSAMO and ANTHONY CALABRESE, together with others, did knowingly and intentionally steal property by extortion, in that the defendant and others obtained property, to wit: money, by compelling and inducing John Doe #5 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

RACKETEERING ACT EIGHT
(Hobbs Act Extortion Conspiracy/Hobbs Act Extortion/Extortion Conspiracy/Extortion - John Doe #6)

45.   The defendant ANTHONY CALABRESE committed the following acts, any one of which alone constitutes Racketeering Act Eight:

A.   Hobbs Act Extortion Conspiracy

46.   On or about and between May 1, 2010 and August 31, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY CALABRESE, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement

19

of articles and commodities in commerce, by extortion, in that

the defendant and others agreed to obtain property, to wit:

proceeds from a pizzeria located in Staten Island, New York, from

John Doe #6, an individual whose identity is known to the Grand

Jury, with his consent, which consent was to be induced by

wrongful use of actual and threatened force, violence and fear,

in violation of Title 18, United States Code, Section 1951(a).

> B.   <u>Hobbs Act Extortion</u>

47.   On or about and between May 1, 2010 and August 31,

2010, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendant ANTHONY

CALABRESE, together with others, did knowingly and intentionally

obstruct, delay and affect commerce, and the movement of articles

and commodities in commerce, by extortion, in that the defendant

and others obtained property, to wit: proceeds from a pizzeria

located in Staten Island, New York, from John Doe #6, with his

consent, which consent was induced by wrongful use of actual and

threatened force, violence and fear, in violation of Title 18,

United States Code, Sections 1951(a) and 2.

> C.   <u>State Law Extortion Conspiracy</u>

48.   On or about and between May 1, 2010 and August 31,

2010, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendant ANTHONY

CALABRESE, together with others, did knowingly and intentionally

20

conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #6 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

     D.    <u>State Law Extortion</u>

     49.    On or about and between May 1, 2010 and August 31, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY CALABRESE, together with others, did knowingly and intentionally steal property by extortion, in that the defendant and others obtained property, to wit: money, by compelling and inducing John Doe #6 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

<u>RACKETEERING ACT NINE</u>
(Extortion Conspiracy/Attempted Extortion - John Doe #7)

     50.    The defendant ANTHONY CALABRESE committed the following acts, either one of which alone constitutes Racketeering Act Nine:

21

A.   State Law Extortion Conspiracy

51.   On or about and between September 1, 2010 and
January 20, 2011, both dates being approximate and inclusive,
within the Eastern District of New York and elsewhere, the
defendant ANTHONY CALABRESE, together with others, did knowingly
and intentionally conspire to steal property by extortion, in
that the defendant and others agreed to obtain property, to wit:
money, by compelling and inducing John Doe #7, an individual
whose identity is known to the Grand Jury, to deliver such
property by instilling in him a fear that, if the property were
not so delivered, one or more persons would (1) cause physical
injury to one or more persons in the future and (2) cause damage
to property, in violation of New York Penal Law Sections
155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

B.   State Law Attempted Extortion

52.   On or about and between September 1, 2010 and
January 20, 2011, both dates being approximate and inclusive,
within the Eastern District of New York and elsewhere, the
defendant ANTHONY CALABRESE, together with others, did knowingly
and intentionally attempt to steal property by extortion, in that
the defendant and others attempted to obtain property, to wit:
money, by compelling and inducing John Doe #7 to deliver such
property by instilling in him a fear that, if the property were
not so delivered, one or more persons would (1) cause physical

22

injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii), 110.00 and 20.00.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

<u>COUNT TWO</u>
(Racketeering Conspiracy)

53.  The allegations contained in paragraphs 1 through 12 and 16 through 17 are realleged and incorporated as if fully set forth in this paragraph.

54.  On or about and between June 1, 2005 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY GRAZIANO, also known as "TG," and NICHOLAS SANTORA, also known as "Nicky Mouth," together with others, being persons employed by and associated with the Bonanno crime family, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below.  Each defendant agreed

23

that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

RACKETEERING ACT ONE
(Extortionate Collection of Credit Conspiracy/Attempted
Extortionate Collection of Credit/Extortion Conspiracy/
Attempted Extortion - John Doe #8)

55. The defendant ANTHONY GRAZIANO agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act One:

A.  Extortionate Collection of Credit Conspiracy

56. On or about and between June 1, 2005 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY GRAZIANO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #8, an individual whose identity is known to the Grand Jury, in violation of Title 18, United States Code, Section 894(a)(1).

B.  Attempted Extortionate Collection of Credit

57. On or about and between June 1, 2005 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY GRAZIANO, together with others, did knowingly and intentionally participate in the use of extortionate means to attempt to collect one or more extensions of credit from John Doe #8, in

24

violation of Title 18, United States Code, Sections 894(a)(1) and 2.

C.   <u>State Law Extortion Conspiracy</u>

58.   On or about and between June 1, 2005 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY GRAZIANO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #8 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

D.   <u>State Law Attempted Extortion</u>

59.   In or about and between June 1, 2005 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY GRAZIANO, together with others, did knowingly and intentionally attempt to steal property by extortion, in that the defendant and others attempted to obtain property, to wit: money, by compelling and inducing John Doe #8 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or

25

more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii), 110.00 and 20.00.

<u>RACKETEERING ACT TWO</u>
(Illegal Gambling)

60.   On or about and between September 1, 2010 and January 20, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS SANTORA, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving bookmaking, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955(a) and 2.

<u>RACKETEERING ACT THREE</u>
(Extortion Conspiracy/Extortion - John Doe #9)

61.   The defendant ANTHONY GRAZIANO agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Three:

A.   <u>State Law Extortion Conspiracy</u>

62.   On or about and between August 23, 2011 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY GRAZIANO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #9, an individual whose identity is known to the Grand Jury, to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

B.   <u>State Law Extortion</u>

63.   On or about and between August 23, 2011 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY GRAZIANO, together with others, did knowingly and intentionally steal property by extortion, in that the

27

defendant and others obtained property, to wit: money, by
compelling and inducing John Doe #9 to deliver such property by
instilling in him a fear that, if the property were not so
delivered, one or more persons would (1) cause physical injury to
one or more persons in the future and (2) cause damage to
property, in violation of New York Penal Law Sections 155.40(2),
155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

RACKETEERING ACT FOUR
(Extortion Conspiracy/Attempted Extortion/Marijuana Distribution
Conspiracy - John Doe #5)

64.   The defendant NICHOLAS SANTORA agreed to the
commission of the following acts, either one of which alone
constitutes Racketeering Act Four:

A.   State Law Extortion Conspiracy

65.   On or about and between September 1, 2011 and
November 21, 2011, both dates being approximate and inclusive,
within the Eastern District of New York and elsewhere, the
defendant NICHOLAS SANTORA, together with others, did knowingly
and intentionally conspire to steal property by extortion, in
that the defendant and others agreed to obtain property, to wit:
money, by compelling and inducing John Doe #5 to deliver such
property by instilling in him a fear that, if the property were
not so delivered, one or more persons would (1) cause physical
injury to one or more persons in the future and (2) cause damage

28

to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

    B.    <u>State Law Attempted Extortion</u>

        66.  On or about and between September 1, 2011 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS SANTORA, together with others, did knowingly and intentionally attempt to steal property by extortion, in that the defendant and others attempted to obtain property, to wit: money, by compelling and inducing John Doe #5 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii), 110.00 and 20.00.

    C.    <u>Marijuana Distribution Conspiracy</u>

        67.  On or about and between November 1, 2009 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS SANTORA, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a

substance containing marijuana, a Schedule I controlled

substance, in violation of Title 21, United States Code, Sections

841(a)(1) and 846.

(Title 18, United States Code, Sections 1962(d), 1963

and 3551 et seq.)

COUNT THREE
(Collection of Unlawful Debt Conspiracy)

68.   The allegations contained in paragraphs 1 through

15 are realleged and incorporated as if fully set forth in this

paragraph.

69.   On or about and between January 1, 1999 and

September 7, 2011, both dates being approximate and inclusive,

within the Eastern District of New York and elsewhere, the

defendants VINCENT BADALAMENTI, also known as "Vinny TV," VITO

BALSAMO and ANTHONY CALABRESE, together with others, being

persons employed by and associated with the Bonanno crime family,

an enterprise that engaged in, and the activities of which

affected, interstate and foreign commerce, did knowingly and

intentionally conspire to violate Title 18, United States Code,

Section 1962(c), that is, to conduct and participate, directly

and indirectly, in the conduct of the affairs of that enterprise

through the collection of unlawful debt, as that term is defined

in Title 18, United States Code, Section 1961(6), to

wit: (1) debts that were unenforceable under New York State law,

to wit: New York Penal Law Section 190.40, in whole and in part

30

as to principal and interest because of the law relating to usury and were incurred in connection with the business of lending money and a thing of value at a rate usurious under New York State law, where the usurious rate was at least twice the enforceable rate; and (2) debts that were incurred in gambling activity which was in violation of federal law, to wit: Title 18, United States Code, Section 1955, and New York State law, to wit: New York Penal Law Section 225.05, and were incurred in connection with the business of gambling in violation of federal law and New York State law, in violation of Title 18, United States Code, Section 1962(c).

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

COUNT FOUR
(Extortionate Collection of Credit Conspiracy - John Doe #8)

70. On or about and between June 1, 2005 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY GRAZIANO, also known as "TG," together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #8.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

## COUNT FIVE
(Attempted Extortionate Collection of Credit - John Doe #8)

71.   On or about and between June 1, 2005 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY GRAZIANO, also known as "TG," together with others, did knowingly and intentionally participate in the use of extortionate means to attempt to collect one or more extensions of credit from John Doe #8.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

## COUNT SIX
(Illegal Gambling)

72.   On or about and between September 1, 2008 and January 31, 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BADALAMENTI, also known as "Vinny TV," together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving bookmaking, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation

32

for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

### COUNT SEVEN
(Marijuana Distribution Conspiracy)

73.    On or about and between September 1, 2008 and January 31, 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BADALAMENTI, also known as "Vinny TV," together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing marijuana, a Schedule I controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Sections 846 and 841(b)(1)(D); Title 18, United States Code, Sections 3551 et seq.)

### COUNT EIGHT
(Extortionate Extension of Credit Conspiracy - John Doe #5)

74.    On or about and between January 1, 2009 and September 7, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BADALAMENTI, also known as "Vinny TV," together

33

with others, did knowingly and intentionally conspire to make one or more extortionate extensions of credit to John Doe #5.

(Title 18, United States Code, Sections 892(a) and 3551 et seq.)

## COUNT NINE
### (Extortionate Extension of Credit - John Doe #5)

75.   On or about and between January 1, 2009 and September 7, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BADALAMENTI, also known as "Vinny TV," together with others, did knowingly and intentionally make one or more extortionate extensions of credit to John Doe #5.

(Title 18, United States Code, Sections 892(a), 2 and 3551 et seq.)

## COUNT TEN
### (Extortionate Collection of Credit Conspiracy - John Doe #5)

76.   On or about and between January 1, 2009 and September 7, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT BADALAMENTI, also known as "Vinny TV," VITO BALSAMO and ANTHONY CALABRESE, together with others, did knowingly and intentionally conspire to participate in the use of

34

extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #5.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

## COUNT ELEVEN
### (Extortionate Collection of Credit - John Doe #5)

77.   On or about and between January 1, 2009 and September 7, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT BADALAMENTI, also known as "Vinny TV," VITO BALSAMO and ANTHONY CALABRESE, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #5.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

## COUNT TWELVE
### (Marijuana Distribution Conspiracy)

78.   On or about and between November 1, 2009 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS SANTORA, also known as "Nicky Mouth," together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled

substance, which offense involved a substance containing marijuana, a Schedule I controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Sections 846 and 841(b)(1)(D); Title 18, United States Code, Sections 3551 et seq.)

COUNT THIRTEEN
(Hobbs Act Extortion Conspiracy - John Doe #6)

79. On or about and between May 1, 2010 and August 31, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY CALABRESE, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others agreed to obtain property, to wit: proceeds from a pizzeria located in Staten Island, New York, from John Doe #6, with his consent, which consent was to be induced by wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

COUNT FOURTEEN
(Hobbs Act Extortion - John Doe #6)

80. On or about and between May 1, 2010 and August 31, 2010, both dates being approximate and inclusive, within the Eastern District of New York, the defendant ANTHONY CALABRESE,

36

together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others obtained property, to wit: proceeds from a pizzeria located in Staten Island, New York, from John Doe #6, with his consent, which consent was induced by wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT FIFTEEN
(Illegal Gambling)

81. On or about and between September 1, 2010 and January 20, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS SANTORA, also known as "Nicky Mouth," together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving bookmaking, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation

37

for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

COUNT SIXTEEN
(Extortionate Collection of Credit Conspiracy -
John Doe #5 and John Doe #10)

82.  On or about and between October 12, 2011 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JAMES LAFORTE, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #5 and John Doe #10, an individual whose identity is known to the Grand Jury.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

COUNT SEVENTEEN
(Attempted Extortionate Collection of Credit -
John Doe #5 and John Doe #10)

83.  On or about and between October 12, 2011 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JAMES LAFORTE, together with others, did knowingly and intentionally participate in the use of extortionate means to

38

attempt to collect one or more extensions of credit from John Doe #5 and John Doe #10.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS ONE THROUGH THREE

84.   The United States hereby gives notice to the defendants charged in Counts One through Three that, upon their conviction of any such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 1963, which requires any person convicted of such offenses to forfeit: (a) any interest acquired or maintained in violation of Title 18, United States Code, Section 1962; (b) any interest in, security of, claims against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendants established, operated, controlled, conducted or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and (c) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of Title 18, United States Code, Section 1962.

85.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

39

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property.

(Title 18, United States Code Sections 1963(a) and 1963(m))

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS FOUR THROUGH SIX, EIGHT THROUGH ELEVEN, THIRTEEN THROUGH SEVENTEEN

86.   The United States hereby gives notice to the defendants charged in Counts Four through Six, Eight through Eleven, and Thirteen through Seventeen that, upon their conviction of any such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section

2461(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds traceable to such offenses. Upon defendant VINCENT BADALAMENTI's conviction of Count Six and defendant NICHOLAS SANTORA's conviction of Count Fifteen, the government additionally will seek forfeiture in accordance with Title 18, United States Code, Section 1955(d), which requires any person convicted of such offense to forfeit any property, including money, used in violation of Title 18, United States Code, Section 1955.

87. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c)', to seek forfeiture of any

41

other property of such defendants up to the value of the forfeitable property.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d); Title 21, United States Code, Section 853(p))

CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS SEVEN AND TWELVE

88. The United States hereby gives notice to defendant VINCENT BADALAMENTI that upon his conviction of Count Seven and to defendant NICHOLAS SANTORA that upon his conviction of Count Twelve, the government will seek forfeiture in accordance with Title 21, United States Code, Section 853(a), which requires any person convicted of such offense to forfeit any property constituting or derived from proceeds obtained, directly or indirectly, as a result of such offense, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offense.

89. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

42

(d)   has been substantially diminished in value;
or

(e)   has been commingled with other property which
cannot be divided without difficulty;
it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p), to seek forfeiture of any
other property of such defendant up to the value of the
forfeitable property.

(Title 21, United States Code, Sections 853(a) and
853(p))


                                        A TRUE BILL

                                        _Gwendolyn A. Wigg_
                                        FOREPERSON


_Loretta E. Lynch_
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2011R02050

FORM DBD-34

JUN. 85

No.

# UNITED STATES DISTRICT COURT

### EASTERN *District of* NEW YORK

### CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

*Anthony Graziano, et al.*

Defendant.

# INDICTMENT

### (T. 18, U.S.C., §§ 894(a)(1) and 3551 et seq.)

*A true bill.*

*Gwendolyn J. Wigg* _____

*Foreman*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____

*Clerk*

*Bail, $* _____

_____

*Nicole M. Argentieri, Assistant U.S. Attorney (718-254-6232)*